Good morning. May it please the Court, I'm Christine Cole with the Department of Justice on behalf of the Petitioner Internal Revenue Service. I'd like to save a few minutes of my time for rebuttal. I think your clerk has given you five extra minutes. Okay. Thank you. The FLRA decision before the Court this morning requires the IRS to pay a compensation award on a collective bargaining agreement. Well, explain that to me. If we should affirm here, can the — well, obviously the FLRA can't get any money, right, because they're a federal agency. Correct. Can the union take our judgment and walk it over to the Treasury and get cash? Well, the effect of the — I'm sorry. Just answer my question. It's a yes or no question. Have you ever seen a judgment of the claims court or the Court of Federal Claims? Have you ever seen one of those? I used to sign them all the time. I don't do that. What happens is when you win a judgment in the Court of Federal Claims, the chief judge signs a warrant, and the Treasury is just a half a block away. You can take it over to the Treasury, and they'll give you cash for it. Can they do that with one of our judgments? No. The answer to your question in this case is — So where does this sovereign immunity question come from, anyway? Well, the type of review that's involved here is basically APA review, which, as you know, doesn't involve — Right. The FLRA is an executive branch agency, right? Correct. Sovereign immunity doesn't apply to them. They can enter any order they want, ordering Treasury to pay money, and that wouldn't violate sovereign immunity. Well, would Your Honor? The basis of their decision — Well, explain to me how an order of an executive branch agency can violate sovereign immunity. That's like the exchequer telling the chancellor or the chancellor telling the exchequer to pay money. There's no sovereign immunity involved. They're all ministers of the king. There's no sovereign immunity involved. You're right, Your Honor, but that's because of the peculiar situation where the FLRA does have You agree that their order is not — does not implicate sovereign immunity? It implicates sovereign immunity in the sense in that it has the consequence of affirming an arbitration award, which in turn was the original source of the award of compensation to the union employees in this case. So there's one or two steps remaining. How does that implicate — I don't understand. An arbitrator isn't a court either. That's correct, Your Honor. You have to get enforcement of an arbitrator's order. That's essentially what happened here, Your Honor. The arbitrator issued an award as a result of the original grievance brought by the union. Did he award back pay? It wasn't back pay. It was — Okay. So he doesn't — he doesn't award money. The arbitrator doesn't award money, right? Well, he — it was a compensation award in effect. It didn't specifically use the word compensation, but it did say that the IRS was obliged to identify — I read your brief. Your brief says specifically that he awarded only forward relief and not back pay. Do you want me to cite you the page in your brief for you? Yes. Page 8, the other blue brief, page 8. First full paragraph, last sentence. However, the arbitrator did not explicitly order the payment of any compensation. Correct. But then this — Well, of course it's correct. It's your statement. That's right. Our point in that part of the brief, Your Honor, is that in the actual arbitration award, he did not use the words IRS, you shall pay X amount of money. What he said — And what happens — He spoke in full. What happens if they say, gee, we want cash, we really want cash for our employees? Could they take the arbitration award someplace and get cash for it? Well, that's certainly the union's argument here. But there were a few steps in between. What the arbitrator did award as part of his grant of relief was he directed the IRS to identify the employees who would be entitled to overtime compensation under his reasoning. What happened, though, is the IRS declined to do that. Once you identify the employees, you've got to identify the employees. Then the employees can go to the Court of Federal Claims under the Tucker Act and try to get compensation. And then you've got the whole question of whether or not the Tucker Act is enough of a waiver of sovereign immunity to obtain compensation for those employees. But the arbitration award doesn't grant any compensation, doesn't cost the Treasury any money. Well, Your Honor, again, we're not here to challenge the arbitration award because we can't. We're precluded by statute from challenging that award. How this case got to court was — Well, but you remember what we're talking about, arbitration award, because you say FLORA enforces arbitration award. So, and therefore, that's why there's a — because my question was how is there a sovereign immunity issue when you have an order of an executive branch agency ordering another executive branch agency to pay money? How is that a — a — a sovereign immunity issue? Again — You said, wait, wait, wait. It's not that. It's the arbitrator. Again, Your Honor, it's a consequence of the peculiar arrangement under the Federal Labor Relations — Federal Labor Management Relations statute that — that created the FLRA as an independent agency that has authority to decide cases involving grievances and unfair labor practice charges. And that's how this case arose. Admittedly, it is a very unusual — I know how this case arose. I know how this case arose. You know, I keep asking you a question, and you keep giving me the background. The question is how does an order — listen carefully to the words. How does an order of an executive branch agency, which orders another executive branch agency to pay money, how does that raise a sovereign immunity claim? Do you have authority supporting that proposition? How — how — how does that raise a sovereign immunity issue? Different when you go to court. When you go to court, you've got a sovereign immunity question to — but how does an order of the agency raise sovereign immunity? Again, Your Honor, and I apologize if I'm not answering your question directly. It's possibly that I don't understand the question. The actual decision before the court today ruled that the IRS committed an unfair labor practice by refusing to comply with the award of the arbitrator. Right. It was made several years before. Right. The basis of the FLRA's decision was — let me step back. In response to the unfair labor practice charge, the IRS raised, for the first time in this proceeding, the defense of sovereign immunity. It said, wait a minute, we cannot pay any amount of money under this contract provision because it's an unlawful contract provision, as both the authority held in 2003 and this Court held in 2005, the very same language in the contract that we're talking about. That focuses back to the start of these questions. Do you concede that even if we affirm the mandate of this Court, which is the equivalent of the judgment in district court, cannot — they can't collect on it? They can't attach. They can't go to the Treasury and ask for money. In order to collect on that, they have to, as I understand, they have to go to the court of claims where you would have every right to assert your sovereign immunity contentions, right? Except you'd have the Tucker Act to deal with, but — Yeah. Yes, Your Honor. Again, I would hesitate to say that if this Court were to affirm the — what we consider a seriously flawed decision of the FLRA that — and if we decided not to pursue further review, one might say then the consequence of that is that the award is not unlawful, and that would be something the IRS could pay under the Anti-Deficiency Act. But, again, that's — if it wished to do it, and the Justice Department could settle under the Attorney General's settlement authority. But the fact is it would not have been ordered by a court to pay. That doesn't happen until you go to collect under the Tucker Act or under the Lung-Tucker Act, if you go to district court. You're not there. You don't have a sovereign immunity issue. Well, again, Your Honor, I'm — Let me ask you a somewhat different question. Let me just get at this a different — the first time they went to the FLRA, Treasury said, nah, we don't feel like following the FLRA's order, right? I wouldn't put it quite that casually. Well, all right. Let's put it more seriously. They said, no, we're not going to pay. Okay? Is that better? Well, if — So now they got a second order from the FLRA. The government is appealing and telling us, well, we want you to set aside. And let's say we say, no, we agree with the FLRA. How do we know that's not an advisory opinion? How do we know that the Treasury will, in fact, do what the FLRA requires it, even though it didn't do it the first time? Well, it would be quite a different situation. What's happened here is it's basically an exhaustion of remedies. There are different ways that the IRS could approach this. When I say it wasn't quite a matter of them saying, nah, we're not going to pay it, what happened in the interim was that the IRS realized that this particular collective bargaining provision was unlawful because it was inconsistent with a You never raised that claim during the collective bargaining procedure, before the collective bargaining agreement was made. You never made the argument that we will not negotiate this because our regulation prohibits us from doing it, did you? The first time around, the IRS agreed to that provision. All right. Well, not only did you agree with it — And subsequently, they realized it was unlawful. You agreed to the collective bargaining agreement, which allowed this. That's correct. Now, getting back to basics, you have to acknowledge, is your Supreme Court opinion right on it, that the Federal Labor Standards Act, you waived immunity to that. The government waived immunity to it. For certain types of claims under the Federal Labor Standards Act, those claims that involve violations of Section 206, 207, and 215. None of the exceptions have anything to do with this case. The Federal government specifically waived its immunity under the FLRA. Except in some exceptions, none of which have anything to do with this case. Right. And waivers of immunity — Let me just follow through with this, please. Now, the Portal Act does not have any remedy provision in it as such, does it? Correct. It is, in effect, an amendment to the FLSA. Correct. Now, my mind tells me that if the government waived its immunity to the FLSA, and then they waived immunity to it, and then subsequent to that immunity, Congress then passed a legislation amending the FLSA with the Portal to Portal Act. Ergo, the government waived its immunity to the FLSA, as well as the Portal to Portal Act as part of the FLSA. So how can you make an argument to this Court that you are not allowed to — that you are immune from anything under the Portal to Portal Act when the government waived its immunity to the act which it amended? Your Honor, waivers of immunity, as the Court knows, are strictly construed in the government's favor, and that's especially so when you're talking about any kind of money that's at issue. We agree that the Portal to Portal Act amended the FLSA. And has no provision in it for — That's correct. All right. So, excuse me, please. The Portal to Portal Act must be viewed as an annex to the FLSA. We don't disagree with that, Your Honor. The problem is, is that's not the end of the inquiry. All the Portal to Portal Act says is that if there's a contract that provides for commuting time, then the employer may be held liable for that. We know what it says. The problem, Your Honor, is, and I think this is best demonstrated by a part of the — a statement in the FLRA's reply brief that says the Portal to Portal Act, and this is page 7 of their reply brief, the Portal to Portal Act under which they found the waiver of sovereign immunity gives Federal employees the right to contract for compensation for commuting time. That is utterly incorrect. The Portal to Portal Act doesn't give any employees, private or governmental, the right to collective bargaining over anything. The only statute that gives Federal employees the right to collective bargaining is the Federal Labor Management Relations Statute. And that's not an unbounded grant of bargaining rights. It's limited by a very important statutory provision, and that's Section 7117A1. Under that provision, the government is obliged to bargain only over matters that are not inconsistent with government-wide regulations. I know, but there's where the rub happens. You did not have to bargain. You did not have to enter into this collective bargaining agreement with this provision in it because the regulation gave you the ability not to. But you did. You did enter into this collective bargaining agreement. And that was a mistake, Your Honor. That's your mistake. Excuse me. That is a mistake you made, but the government entered into that collective bargaining agreement it never should have. That's what takes this case out of the NTEU case. This is different than NTEU because you're in a situation now where the government entered into a contract, which it shouldn't have entered into, which it could have avoided, but it did. So my question to you is the government unquestionably waived immunity under the FLSA. The Portal Portal Act is obviously just an extension of the FLSA, and you entered into an agreement with your adversary. Perhaps what you should have, you could have avoided entering into. You had the right to enter into it, but you could have avoided it. You did not avoid it. You entered into it. There's a binding contract you have. Why aren't you why shouldn't we sustain the award because it is not contrary to law? The short answer to your question, Your Honor, is that a government official who enters into a contract, rightly or wrongly, cannot waive the government's sovereign immunity. It is fundamental sovereign immunity jurisprudence that the government's immunity cannot be waived except by an express and unequivocal statement in a statute. But that government official did not waive the government's immunity. The FLSA waived it and the Portal Portal Act waived it, and you could have avoided that by a regulation, which you never raised when the government entered into the contract. I disagree, Your Honor. Again, the waiver of sovereign immunity in the FLSA and to the extent that the Portal Portal Act amends it is a limited waiver of sovereign immunity for only violations of 206, 207, and 215. What we have here is an alleged violation of an unlawful provision of a collective bargaining agreement. If it's so obvious to you that this is unlawful, why did the government enter into the collective bargaining agreement in the first place? It's so obvious to you. I can't answer that question, Your Honor. Well, you've got to answer it. You've got to answer it because the government entered into this contract and the government had no problem in entering the contract. The government makes mistakes, Your Honor, and whoever the labor relations official that initially entered into that agreement, they made a mistake. If the government makes a mistake, does the government have to stand for its mistakes like everyone else when they make them? It does, Your Honor, but in this case we're talking about the public fisc and we're talking about a very important principle, and that is sovereign immunity. There is no waiver of sovereign immunity here. It must be found in an express and unequivocal provision of a statute. There is no statute that does that here. Let me ask you this. There's only one sentence in the FLRA opinion that refers to back pay. Let's say we were to affirm everything except that one sentence. Would you still have an argument? If you're referring to the rest of the remedy that was awarded here, it's all connected to the compensation award. The other things that were awarded here was a notice. There's one sentence that talks about back pay, that talks about compensating employees for — I can't see how you can have an argument with anything but that one sentence. I mean, we've asked you all sorts of questions as to whether you have legitimate arguments as to that sentence, but let's put all that aside. And assuming sort of all of the arguments are really good and meritorious, would they apply to anything more than striking the one sentence? Technically, no, Your Honor, but the rest of the remedies that — Well, it's like technically don't help you any, because what we do is technical. You know, you're asking us for specific remedies, for specific enforcement or non-enforcement. Would it solve the — do you have a claim against any other part of the opinion of the one sentence? We focused our challenge on the award of compensation. Yes or no on your vocabulary? Is there anything other than that one sentence that you are challenging on solid immunity grounds? No. No. So it follows that if we were to, for example — I'm not saying we would do this, but if we were to say all of the FLIR's opinion is affirmed except for the one sentence, you would have no complaint with that? Because you concede everything else. You concede there's an unfair labor practice and all that, right? Well, no, we don't concede that it's an unfair labor practice. All we've conceded is that we declined to comply with the arbitrator's award. We — I don't believe we ever conceded because our defense — All right, all right. Let me start the question again. If we were to say we affirm the FLIR's order except for the one sentence, the grants back pay, you have no solid immunity argument or any other argument against that result, right? If I might give more than a yes or no answer to that, Your Honor. You can start with a yes or no, and then you can explain to your heart's content in there over time. I've now forgotten how you phrased it. You either would have a problem with it or you wouldn't. You would think that would satisfy you completely if we struck the one sentence. Or you would say, no, I'm still unhappy with it because — so which is it? Happy or unhappy? Let's try and say yes or no. Sort of happy. Moderately happy, Your Honor. But we're still — we object to all of the reasoning, all two pages of it, in the FLRA's decision. The focus of our collaboration — Does it cost you money? Does the reasoning cost you money? No. So what basis do you have for objecting to it? Well, we think it's bad reasoning, and it is a public FLRA decision. What does it violate? It's bad because of what? Well, it's — again, it's bad reasoning in our view, and it could have some value in future cases. We have narrowed our sovereign immunity claim to that portion of the order that actually grants relief, and there's several prongs of it. But the only one that really matters at the end of the day was the compensation award. The other award was to identify the employees entitled to the compensation. Well, if compensation is — Is that sort of like — What good does it do to identify — Is that sort of like counting the children of Israel? You know, is that sort of a sin? I'm sorry, Your Honor. Is it like counting the children of Israel, you know, forbidden? You know, you shall not — I don't know. Maybe that's important to the union. I can't answer that. But, again, the other parts of the award that were identified in the authority's decision are really inextricably connected to the bottom-line compensation award, and they don't matter as much, which is why we didn't focus on that. If we — if the Court were to, of course, we have made a decision and say that, yes, back pay, you don't have to pay, I assume you would view the balance of our decision as, like, declarative and in terms of relief. I'll settle for that. Well, okay, yeah, but then it's not so easy to settle. Then you'd have to take the judgment and go over to the Court of Claims, and you could make the same argument there you just made here, couldn't you? We wouldn't be going to the Court of Claims. They would be going to the Court of Claims and say, we want to collect on this declarative action for future compensation. That's not — that's probably neither you nor they would be happy with that, because they wouldn't be getting back pay, and they would only get declarative relief from us, and that would only take them to the next collective bargaining agreement, which obviously at that time you're going to raise the regulation. Well, this is already out of the collective bargaining agreement. It's been out of the collective bargaining agreement since 2002, and in fact the final nail in that coffin was nailed in in 2005 by this Court. So essentially we're dealing with back pay. We're dealing with back pay, not prospective pay. That's correct. I hesitate to use the word back pay because it's more — that implicates other statutes. This is about compensation for, I guess, overtime. Yeah, this is for services rendered in the guise of an unfair labor practice. Well, it wasn't services rendered. This is — keep in mind, Your Honor, this is about time for commuting to work. We know what it's about. And this was a commute within the employee's official duty station. So it's not strictly back pay. Let me ask you this question. Let's say we don't strike that one sentence and we affirm, we reject all of your arguments and we affirm the order of the agency. Does Treasury commit to pay the money? Well, Your Honor, as you know, we would have to — I'm taking yes and no or not in your — I can't answer that yes or no because it's not a decision — Well, you're either committing or you're not committing. The answer is you're not committing to pay it. Excuse me? You're not committing to pay it. You're not saying you won't pay it, but you're not committing here to pay it. It would be an adverse decision that would have to be scrutinized by the solicitor general who would have the final call on that. No, no. I understand that you'd still be able to go for cert. I'm assuming that the time for cert passes or cert is denied or, you know — I'm assuming this becomes final. Are you at that point committing to paying the money? I believe so, Your Honor. I haven't discussed that specifically with the client, but at that point, I believe our recourse to the courts to challenge this would have been expended. Well, you could say we don't have a court order to pay. We don't have a determination of how much. For that, they have to go bring a lawsuit. So you could take that position. I'm just wondering what your view is on that. I suppose we could, you know, look at our options again at that point. But, again, as I believe I said earlier, at that point, you know, arguably we would have a court judgment sufficient to satisfy the Anti-Deficiency Act. But, again, I would hesitate to make a firm commitment and stand here and say that we absolutely positively, you know, wouldn't consider it further because that's something that we really haven't examined yet. Okay. Thank you. Thank you, Your Honor. We'll hear from the other side. I guess you all have decided to split your time. I was sort of misreading the day sheet here. Good morning, Your Honor. James Blanford for the Federal Labor Relations Authority. Yes, we've split our time with the interveners, the National Treasury employees. You work for the General Counsel? Pardon me? You work for the General Counsel? No, we work for the authority side. For the authority? For the FLRA. Okay. Your Honor, the only question here is whether the IRS committed an unfair labor practice for refusing to comply with a final and binding arbitration award. This Court, the Marshal Service, made it clear that once an arbitrator's award is final and binding, it's not subject to collateral attack, and in UOP proceedings, the only issue is compliance or noncompliance. Here, after exhausting the statutory avenues to challenge the underlying arbitration award, the IRS now contends that the award is barred by sovereign immunity. The authority found that sovereign immunity is not a bar to compliance with this arbitrator's award, citing the Porter v. Porter Act. That is the end of the story. The reliance on the regulation, 5 CFR, I believe it's 551, is not indicated by sovereign immunity. If we disagree with the agency's interpretation of the Porter v. Porter Act, then we have to do what? The agency meets the FLRA? Yes. If you agree with our interpretation, then? Disagree. Disagree. Oh, disagree. I'm sorry, Your Honor. We know what to do when we agree. We're firm. It's easy. Let's say we were to disagree with the agency as to its interpretation of the Porter v. Porter Act. Well, perhaps you still affirm the authority's order insofar as it does not run afoul of any sovereign immunity. I think if you agree with Treasury here that this is a violation of sovereign immunity if the agency orders a payment of money. That has been the view of the authority. It's the view of the D.C. Circuit. Yes, I saw that. In the Department of the Army case, they invalidated an authority award based on sovereign immunity. Not very thorough reasoning, I saw, Judge Ginsburg, in that case. I mean, the reasoning was not particularly thorough. It just said, well, this is a claim. We're being asked to enforce this order, and obviously it implicates a payment of money, and so that's it. So it was not particularly thorough. It didn't explain exactly how it is that anybody would actually get cash out of the Treasury using this order of the D.C. Circuit. Maybe being in the D.C. Circuit, they're a lot closer to the Treasury and can do things that we can't do. I don't know about that, Your Honor. Let's say we do affirm. Can NTU take the judgment to Treasury and get paid? How do they get money out of Treasury, out of the Treasury? Well, the authority's order enforces the arbitrator's award, and the authority's order does order compensation for those employees who were deprived of compensation by the unwarranted personnel. But how do you reduce that to cash? I assume the NTU goes to the Department of the Treasury, to the Internal Revenue Service, with the judgment enforcing the authority's order in hand and demands payment. No, they can't do that. They have to do the same thing any litigant does that has an arbitration award, which is if it weren't the government, they would go to district court. Here, you go through the agency, you come to the Court of Appeals. They'd have to take the arbitrator's award and go to the Court of Claims and say they want payment. I mean, it's the same thing they would do, but that's not. I mean, for one thing, people at the Treasury, I don't mean Department of the Treasury, I mean the guy in the cage there who hands out the cash would say, how much? There's no number written on this judgment. We don't know how much to pay out. Let's say we want to comply with this judgment. You need an adjudication to figure out how much the Treasury owes these people. Right, and that would be worked out through compliance procedures after the enforcement of the award. As far as the mechanics of the National Treasury Employees Union getting their check beyond the judicial enforcement of the authority's award, I don't know exactly how that would occur. Yeah, but the point is if they don't want to pay it, you just have to go to the Court of Claims, and it's as simple as the Federal Court of Claims. They would have to go to the Court of Claims. I suppose so, Your Honor. There's no other way you get paid by the government if it's not an appropriated payment. Right. Exactly. Isn't that where all sovereign immunity claims must be raised? It's at the point where a court is actually being asked to write a judgment that can be converted into cash. Isn't that where sovereign immunity issues are raised and resolved? Perhaps that's where most of them are raised. As I say, I know, you know, where at least one case where it was raised in an authority ULP case and was raised before the court of appeals. We have disagreed with the D.C. Circuit in the past on these things, even on administrative law matters. Pardon me? I said we have disagreed with the D.C. Circuit in the past, even on administrative law matters. But you don't have anything to add to what was said in that case? No. In Department of the Army v. Flora. Department of the Army. Okay. How do you get around our statement in the NTEU? How do you distinguish this case from the NTEU case where they successfully raised the regulation? That's right. It was a different case, different context, different issues. Here the issue is did they comply with the final and binding arbitration award? The award became final and binding after they went through the exceptions process and the exceptions were denied. That's the end of the story. In the NTEU case, that was a negotiability case. And there the argument that the bargaining proposal at issue was inconsistent with a government-wide regulation was properly raised. The authority agreed it is inconsistent with the government-wide regulation and found the proposal to be nonnegotiable. But to raise that issue here would be making a collateral impact on the arbitration award, what Marshall Service prohibits. Does the fact that the provision agreed to by the government is contrary to the OPM regulation, does that make a does that color our disposition here at this time? No, it doesn't. Because, as I say, that would be a collateral attack on the award itself. That ship has gone out to sea. In other words, the government's timing is bad. They should have raised this at the arbitration, at the collective bargaining stage, and not after ‑‑ after ‑‑ Correct. Correct. And they could have, but didn't timely raise it in the arbitration proceeding and the exceptions there. Is your position that they cannot raise it now or that if they do raise it, we should adjudicate it as a nonmeritorious defense? What is your position? The position is they can't raise the inconsistency with 551 in this proceeding. That would be a collateral attack on the arbitrator's award. And that's not allowed here. Going back to Judge Kaczynski's question, if we say that, look, the government cannot raise that at this point, so we affirm the agency, what is your position that when they eventually take this arbitration award and go over and knock on the Federal Claims Court, can they ‑‑ can the government ‑‑ can the Federal Claims Court ‑‑ can it be raised at the Federal Claims Court level or is it race judicata because we've said they've got to pay it? What's your position? The inconsistency with the government-wide regulation? I would say that they would be barred from raising that in any form, that that is race judicata. What is race judicata is there's a final and binding arbitration award that orders compliance with the collective bargaining provision. But the big difference, isn't it, between having a one agency of the government, which is FERA, ordering another agency to pay and having a court order, a court judgment. A court judgment you can actually ‑‑ you obviously can't collect against the property of the United States, but the good part is that it converts into a warrant against the Treasury. So you can turn a judgment against the United States into cash, whereas you can't turn a order of FERA, as most advise one agency of the government gives to another agency of the government. Well, under the scheme of the Federal Service Labor Management Relations Statute, the authority has expressed authority to order back pay as a remedy to ‑‑ Well, no, no. They can order it, but they can't actually make Treasury pay it. They can't actually force ‑‑ Our orders are ‑‑ Or any government agency to pay. All they can do is enter an order. If somebody actually wants an action on that order, they have to take it someplace and convert it into a judgment. Right? Well, our orders are enforced by the courts of appeals. And that's ‑‑ and failure to comply at that stage is contempt of the court's order. But as the mechanics of getting the cash ‑‑ I see. So it's your position that if we affirm and they don't pay up, you can come back here and hold them in contempt? I believe so, Your Honor. Hold who in contempt? Hold the government in contempt? Pardon me? Hold who in contempt if they don't pay? Hold the government in contempt? Henry Paulson. The Internal Revenue Service is the agency. Yeah, well ‑‑ Excuse me? Henry Paulson. The Treasurer's secretary. Let me ask this. Make him come in here. Not that we don't want to do our work here, but suppose we duck the issue here and say, Look, we have an arbitration award here, and we don't have to ‑‑ we're not going to rule on this sovereign immunity defense. The government can raise this defense when they knock on the door of the Federal Claims Court and let them raise it at that time. What's wrong with that? Not that we want to duck our job, but what's wrong with that scenario? Only that it doesn't resolve the case, and the case, we believe, can be resolved here with an affirmance of the order and a judgment, so saying that the authority's order is enforced. What goes on in the Court of Claims we wouldn't be a party to? That would be between either Treasury itself or maybe the individual employees would have to bring action. I assume it would be the union who is the representative. I don't know. I think it would have to be the individual employees. The union could represent them, but let me ‑‑ the arbitration order is not a word back pay. All the arbitration order says is you've got to change your ways. And it says identify the employees who ‑‑ Right. Identify the employees, how much work they did. It doesn't say pay and money. It says the employer's action constitutes an unjustified personnel action resulting in a loss of pay, but for the employer's actions, grievance ‑‑ Is it a Washington thing? There's no yes or no? I think the authority ‑‑ Listen to the question. If you can at all answer yes or no, why don't you answer yes or no? Okay. Does the arbitrator's order ‑‑ does the arbitrator order payment of money? It's been ‑‑ No, no. Yes. Yes, it did. And the authority so interpreted it, and the authority's award enforcing the arbitrator's ‑‑ But that's the question. I mean, the authority adds something by saying there should be pay. Does the arbitrator's order contain a word of compensation? I think there's a reasonable interpretation of the arbitrator's award. The arbitrator found that denying them to pay was an unwarranted personnel action, but for the employees ‑‑ But it didn't award a dime. It didn't say it. All it declared was this was an unfair labor practice and declared ‑‑ declaratory relief. That's all it did. What if we ‑‑ that's right. What if, as Judge Carman just suggested, we look at the arbitrator's order, we say it doesn't award anything, and insofar as FLRA thinks it does, it is wrong, and we were to strike that one sentence in the order that awards back pay? Well, we would disagree. As unsupported by the ‑‑ as unsupported by the arbitrator's award. We would disagree with it. Neither party has challenged that at this stage. The IRS has interpreted as requiring compensation. The union has. Your Honor, my allotted time is up, and I don't want to take the time away from the intervener's union time. Okay. Let's hear from the union. If there are any other questions, I would be more than happy to answer them at this point. Okay. Thank you, Your Honors. Yes or no? Would you be happy to answer them that way? Pardon me? Would you be happy to answer them yes or no? Good morning, Your Honors. My name is Julie Wilson. I'm an assistant counsel with the National Treasury Employees Union, intervener in this case. What I'd like to do first is underscore what's really at issue here, and that is monetary compensation. The parties have all conceded that this contract provision deals with monetary compensation. This court itself, in the Ninth Circuit negotiability case, found the contract provision dealt with money and the payment of employees. So the question of whether the arbitrator's award ultimately addressed the issue of paying employees money is really not in dispute. The FLRA found that the IRS failed to comply with the arbitrator's award. It ordered the IRS to comply with that award, and by extension, the IRS now has to pay employees money for violating the contract provision. So you read the arbitrator's order as actually ordering back pay? Yes. And the FLRA's order as ordering back pay? Yes. And do we know how much back pay? No, because we don't know. We never – the IRS never complied with any portion of the award. The arbitrator set up the procedures to identify employees and then to pay them. It's because there was really no way of knowing how many employees. I don't read the whole story. The answer is no. We don't know how much money is involved, no, Your Honor. Okay. So if NTU says, now, you know, this has been fun, but we'd really like to get some money for our members. We would say that, yes. I knew I'd get a yes for that. How would you go about actually getting that cash? Well, the authority has – Let's say we were to affirm here. So now you've got a judgment of our court enforcing the FLRA's order. Well, as you acknowledged earlier, the authority has – the FLRA has the authority to issue awards for back pay under 7122B and arbitrator's awards issuing back pay. So we would go to – if you were to affirm the authority's decision here, which we think that you should, and order the IRS to comply with the FLRA's award, then it would be our position that the IRS then has to put into place the mechanisms that the arbitrator set up, the first one being that the agency has to identify employees, the second one being that you have to identify the amount of overtime or the violations of contract that took place, and the third one being that you have to pay employees. What would practically happen, and what has happened in the past in our cases, is that we would get into discussions with the agency on the remedial mechanisms. And you'll see in the arbitrator's award, he reserved authority to work with the parties on compliance with the award. So it's absolutely reasonable for the FLRA to have interpreted that award to have these mechanisms in place for the parties to go back and set up procedures for back pay. What if Treasury says, no, we still disagree, we're not going to do it? We have never faced that situation before. It is very possible, as you've suggested, that we have to go to the claims force, but we've never been in a position where an agency has repeatedly, for years and years and years now, refused to comply with a final and binding award, years after the merits of an award have been litigated. But ultimately what you're saying is if they don't pay voluntarily, what you'd have to do is get an enforcement order on the Tucker Act. Yes. Either go to the Court of Federal Claims, or I guess you could go on behalf of individual employees in district courts under the Little Tucker Act. I assume each employee's back pay would be less than $10,000. I have no way of knowing that, Your Honor. All right. Go ahead. We are dealing with an arbitration award that was issued in 2000. I mean, we're now coming up on 2008. It's hard to believe. But we've been fighting over this for a very long time. I really have no way of knowing how much money is at stake. But I do know that the issue here is whether there's a waiver of sovereign immunity to allow the IRS to pay it, and the answer to that question is unmistakably yes. As the Court acknowledges, the FLSA, as amended by the Parole Department, provides that waiver. Thank you. Okay. Thank you. Well, you've gone way over your time. I think we understand everybody's position. The case is signed. It will stand submitted. We are going to take a short recess before the remaining two cases.
judges: Kozinski, Hawkins, Cowen